KENNETH R. LAMM, Plaintiff v. PAMELA R. LAMM, Defendant

No. COA10-536

(Filed 1 March 2011)

**1. Child Custody and Support— custody change—single conclusion—sufficient**

The trial court's single conclusion in a child custody case reached all three of the required legal conclusions for modifying a child custody order. The court's conclusion clearly stated that substantial changes in circumstances had occurred, that these substantial changes affected the minor child, and that these substantial changes warranted a modification of the existing custody order because they affected the best interests of the child.

**2. Child Custody and Support— custody change—findings—inferences supported by evidence**

Disputed findings by the trial court in a child custody action were inferences supported by the evidence, and the findings supported the conclusions.

**3. Pleadings— Rule 11 sanctions—emergency custody motion**

The trial court did not abuse its discretion by imposing Rule 11 sanctions on defendant for filing an emergency custody motion. The three determinations required under *Turner v. Duke University*, 325 N.C. 152, were answered affirmatively.

**4. Appeal and Error— record—social security numbers**

Although sanctions were not imposed, counsel were cautioned against including social security numbers in the record on appeal.

Appeal by defendant from order and judgment entered October 2009 by Judge C. Christopher Bean in Pasquotank County District Court. Heard in the Court of Appeals 17 November 2010.

*Aldridge, Seawell & Spence, LLP, by W. Mark Spence, for plaintiff.*

*Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene, Tobias S. Hampson, and Edward Eldred, for defendant.*

ELMORE, Judge.

LAMM v. LAMM

[210 N.C. App. 181 (2011)]

Pamela R. Lamm (defendant) appeals an order and judgment modifying a child custody order and imposing Rule 11 sanctions on her. For the reasons set out below, we affirm.

## I. Background

Kenneth R. Lamm (plaintiff) and defendant were married on 28 December 1985 and divorced on 19 May 2005. They had three children together during their marriage: Caroline, born in 1988, Samantha, born in 1992, and Cody, born in 2001.[1] When plaintiff left the marriage, he began a relationship with Janet Markham (Janet), who gave birth to Amy, plaintiff's child, in 2005. Plaintiff and Janet married on 27 May 2005.

Before the final divorce decree, the trial court appointed Dr. David A. Zoll, Ph.D., "to conduct an impartial evaluation of the parties and the parties' minor children." Dr. Zoll concluded that, in order to safeguard the relationship between Cody and plaintiff, physical custody of Cody should be granted to plaintiff. In addition, he concluded that defendant should maintain custody of both Caroline and Samantha. Dr. Zoll went on to testify that he believed that defendant "lacked the ability to manage emotional distress" and that Cody may have viewed having a good relationship with his father as "traitorous" to his mother, with whom he was very close. Dr. Zoll noted that Cody had a "particularly strong attachment to his older sister, [Caroline]." He also testified that defendant, whether deliberately or not, was unable to refrain from expressing her anger regarding the separation and divorce in front of the children. According to Dr. Zoll, if Cody continued to live with defendant and his older sisters, and if their hostile and negative statements continued, then Cody's relationship with plaintiff would be "minimal or non-existent."

After hearing all of the evidence, the trial court concluded that defendant "is the party who will better promote the interest and welfare of the . . . minor children and should be awarded their custody subject to reasonable visitation privileges being granted to the Plaintiff with the minor child, [Cody]." The trial court also found that, "[i]f [Cody] continues to live with the defendant and his sisters, and, if their anger, hostile actions, and negative statements are not curtailed, [Cody's] relationship with the plaintiff will be minimal or non-existent." Continuation of these actions, the court noted, could result in a change of custody. Then, in a child custody order dated 13

---

1. We use pseudonyms for all four children referenced in this opinion, recognizing that not all of them were minors at the time of the appeal.

LAMM v. LAMM

[210 N.C. App. 181 (2011)]

February 2006, the court granted defendant primary custody of the three children and awarded plaintiff visitation rights with Cody.

Cody has been under the care of Christian Psychotherapy Service since 2005. His first therapist was Traci Smith, a licensed clinical social worker, with whom he attended fifty-one sessions. Cody's therapists have been a "matter of contention and inflexibiilty" between the parties. Plaintiff has attempted to bring Cody to therapists in his hometown, Elizabeth City, but defendant has objected to each one, thereby preventing therapy. In July 2007, Janet stated that she believed that Traci Smith was biased in favor of defendant, and, for that reason, Traci Smith withdrew. Cody then began therapy with Dr. Barry Burijon, another therapist at Christian Psychotherapy Service. The trial court found that, "[a]ccording to Dr. Burijon[, Cody's] behavior is regressing, he has no emotional energy, he is sullen, withdrawn and mistrusting." Plaintiff had expressed a lack of confidence in Dr. Burijon's ability to remain objective, and the trial court agreed that it was no longer possible for Dr. Burijon "to objectively and effectively engage in any meaningful family counseling."

Beginning in 2006, Cody began to exhibit violent behavior when visiting plaintiff: he knocked down his half-sister, Amy, who was only one year old at the time; he drew a line across her throat; and he kicked the family puppy. Cody also made statements expressing a hatred towards his father and a desire to kill him. However, there was also evidence that indicated that Cody was neither withdrawn nor depressed during his visits with plaintiff.

Following Cody's violent outbursts and defendant's refusals to allow plaintiff to select a therapist he found suitable, plaintiff filed a motion to modify custody on 31 July 2007. On 24 January 2008, the trial court appointed Harold J. May, Ph.D., to perform an impartial custody evaluation of the parties and their minor children. The trial court found that, while Dr. May's findings were not specific findings about plaintiff and defendant, they did corroborate the court's own findings regarding the characteristics of the parties.

While the motion to modify was pending, defendant filed a motion for emergency child custody on 11 June 2009 (emergency custody motion), the day that plaintiff's five-week summer visitation was scheduled to begin. The emergency motion alleged that Cody was "exposed to a substantial risk of bodily injury or sexual abuse, and an immediate order curtailing Plaintiff's visitation is necessary pursuant to" N.C. Gen. Stat. § 50-13.5(d)(2) and (3). Specifically,

defendant alleged that Cody had "returned from visitation at Plaintiff's house, on several occasions, with his rectal area red and raw. The child has refused to state how the area become red. The child does not have a red rectal area while in his mother's care." The trial court granted an emergency custody order, pending a hearing scheduled for 26 June 2009. Pasquotank County Department of Social Services (DSS) performed an investigation based on defendant's allegations, and Kids First, a child advocacy agency, made an additional examination. The DSS interview included interviews with Cody and other family members as well as reviews of custody evaluations by both Dr. Zoll and Dr. May. The investigating social worker found the report to be unsubstantiated, and the therapists at Kids First found no evidence of sexual abuse. Based on these findings and other evidence offered during the 26 June 2009 hearing, the court dismissed the emergency custody order.

On 7 August 2009, the trial court ordered primary custody to be granted to plaintiff until a final decision could be made. On 1 October 2009, the trial court entered a judgment and order placing primary custody of Cody with plaintiff. In its order, the trial court found that defendant's emergency custody motion had been made "without basis in law or in fact and was interposed for [the] improper purpose" of "block[ing] Plaintiff's scheduled summer visitation." Defendant now appeals.

## II. Arguments

Defendant presents two arguments on appeal: (1) The trial court erred by modifying the custody order because its conclusions of law did not address whether the change in custody was in the child's best interest, and (2) the trial court erred by imposing Rule 11 sanctions on defendant. We address each argument in turn.

## A. Modification of custody order

[1] Our Supreme Court concisely set out the method by which we review modifications to existing child custody orders:

> When reviewing a trial court's decision to grant or deny a motion for the modification of an existing child custody order, the appellate courts must examine the trial court's findings of fact to determine whether they are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Our trial courts are vested with broad discretion in child custody matters. This discretion is based upon the trial courts' opportunity to see the parties; to hear the witnesses; and to detect tenors, tones, and flavors that are lost in the bare printed record read months later by appellate judges. Accordingly, should we conclude that there is substantial evidence in the record to support the trial court's findings of fact, such findings are conclusive on appeal, even if record evidence might sustain findings to the contrary.

In addition to evaluating whether a trial court's findings of fact are supported by substantial evidence, this Court must determine if the trial court's factual findings support its conclusions of law. With regard to the trial court's conclusions of law, our case law indicates that the trial court must determine whether there has been a substantial change in circumstances and whether that change affected the minor child. Upon concluding that such a change affects the child's welfare, the trial court must then decide whether a modification of custody was in the child's best interests. If we determine that the trial court has properly concluded that the facts show that a substantial change of circumstances has affected the welfare of the minor child and that modification was in the child's best interests, we will defer to the trial court's judgment and not disturb its decision to modify an existing custody agreement.

*Shipman v. Shipman*, 357 N.C. 471, 474-75, 586 S.E.2d 250, 253-54 (2003) (quotations and citations omitted).

Here, with respect to her argument that the trial court erred by modifying the existing custody order, plaintiff has challenged the trial court's first conclusion of law and findings of fact 7 and 21. We first address the adequacy of conclusion of law 1, which states: "That substantial changes in circumstances affecting the best interests of the minor child herein have occurred warranting a modification of the February 14, 2006[,] Child Custody Order herein."

Plaintiff first argues that this conclusion of law is inadequate because, as the sole conclusion of law supporting the trial court's custody modification, it does not demonstrate that the trial court "decide[d] whether a modification of custody was in the child's best interests." *See id.* at 475, 586 S.E.2d at 254. Plaintiff correctly points out that the trial court conflated into a single conclusion of law the three conclusions that must precede a modification of an existing

custody order: (1) that "there has been a substantial change in circumstances," (2) that the substantial "change affected the minor child," and (3) that "a modification of custody [is] in the child's best interests[.]" *Id.* However, a single conclusion of law may still address all three required legal conclusions, even if they might be more obviously addressed in three separate conclusions of law. This particular conclusion of law does just that. The conclusion clearly states that substantial changes in circumstance have occurred, that these substantial changes affected the minor child, and that these substantial changes warrant a modification of the existing custody order because they affect the best interests of the minor child.

The key language is "warranting a modification." A modification is only warranted if a change in custody is in the child's best interest. Thus, if a trial court concludes that a modification is warranted, it follows that a change in custody is in the child's best interest. The contrapositive, for those who find the alternate wording more convincing, is that if a change is not in the child's best interest, no modification is warranted. The conclusion, read as a whole, demonstrates that the trial court reached all three required legal conclusions necessary to support a custody order modification.

[2] We next examine whether the conclusion of law is supported by the findings of fact. Plaintiff challenged only findings of fact 7 and 21 in her brief, and, therefore, the remaining findings of fact are binding on appeal. *See Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal.") (citations omitted). The two challenged findings of fact are quite lengthy, but plaintiff challenges only small portions of them:

> 7. . . . Statements made by [Cody] to the social worker who conducted the investigation are clear indications of how he perceived his mother's and sisters' feelings toward Plaintiff, Janet Lamm (Plaintiff's current wife) and [Amy] Lamm (Plaintiff and Janet Lamm's daughter). Those statements include the following:
>
> a. [Samantha] hates dad.
>
> b. Mom doesn't like Janet and talked about Janet and dad a lot.
>
> c. I don't have to be nice to [Amy] or mind Janet.

LAMM v. LAMM

[210 N.C. App. 181 (2011)]

\* \* \*

21. . . . To refer to Plaintiff as "Ken", indicating a level of distance, could only have originated in [defendant's] home.

With respect to finding of fact 7, defendant argues, "Neither the social worker nor any other witness testified [Cody]'s statements were 'indications' of anything." This argument misses the point. The trial court did not say that a *witness* stated that Cody's statements were indications of his perceptions of his mother and sisters' opinions; the court made this inference itself on the *basis* of witness testimony. The finding of fact is supported by the following testimony by Dr. May, discussing a report drafted by a social worker:

[Cody] went on fairly extensively to talk about [Samantha], he did not like her. She was always picking on him, mean to him, always hitting him, punches in the arms, back, chest.

When asked why she would punch him, he said, "Every time I tell her I like Dad, she hits me."

He said, "When Mom is away, she also hits me for no reason."

In talking about the other sister, [Caroline], he said that he got along better with her than with [Samantha] but stated that she does not like—[Caroline]—she does not like Dad, and [Samantha] hates them.

When asked why they hate Daddy, he said because of what they did.

When asked what he did, he stated that he did not know and said that his mom hates Janet and his dad.

Mom tells him that Janet is not his real mother and he is to never call Janet his mother.

That if he called Janet "Mom," he stated Mom will be mad with him and punish him.

His mother told him that his dad doesn't love him, but he said, "but he loves [Amy]."

And [Cody] stated that he sometimes does not know what to say when his mother asks him if he's had a good time at his dad's house.

This testimony supports the trial court's finding that Cody's statements to a social worker "are clear indications of how he perceived his mother's and sisters' feelings toward" plaintiff, Janet, and Amy.

With respect to the challenged portion of finding 21, the trial court again made an inference based on the evidence, this time that Cody's habit of referring to his father by first name could only have been acquired at defendant's home. Even if we were to hold that this particular portion of this single finding of fact is not supported by the evidence, the remaining findings of fact still support the trial court's conclusions. Accordingly, we hold that the trial court did not err by concluding, as a matter of law, that a modification of the 2006 Child Custody Order was warranted.

## B. Rule 11 Sanctions

[3] Defendant next argues that the trial court erred by imposing Rule 11 sanctions on defendant for filing her emergency custody motion. After the 26 June 2009 hearing, plaintiff filed a motion for attorneys' fees and costs, alleging that defendant's emergency custody motion "included no specific allegation of [bodily injury or sexual abuse,] only non-specific allegations intended to imply such risks." Plaintiff further alleged that, at the 26 June 2009 hearing, "[n]o evidence was produced by the Defendant to substantiate a substantial risk of bodily injury or sexual abuse and the Motion, and the Ex Parte hearing held thereon, were frivolous, without basis in law or fact." Plaintiff moved the court for attorneys' fees and costs incurred in the defense of defendant's emergency custody motion. In its order, the court ordered defendant to pay $3,500.00 to plaintiff, "representing attorney's fees incurred by the Plaintiff defending the Motion filed by the Defendant for an emergency Custody Order[.]"

Rule 11(a) provides, in relevant part, as follows:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law . . ., and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanc-

tion, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

N.C. Gen. Stat. § 1A-1, Rule 11(a) (2009).

We review *de novo* a trial court's decision to impose mandatory sanctions under Rule 11(a) of our Rules of Civil Procedure. *Turner v. Duke University*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989).

> In the *de novo* review, the appellate court will determine (1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether the findings of fact are supported by a sufficiency of the evidence. If the appellate court makes these three determinations in the affirmative, it must uphold the trial court's decision to impose or deny the imposition of mandatory sanctions under N.C.G.S. § 1A-1, Rule 11(a).

*Id.* "The appropriateness of a particular sanction is reviewed for abuse of discretion." *Bledsole v. Johnson*, 357 N.C. 133, 138, 579 S.E.2d 379, 382 (2003) (citing *Turner*, 325 N.C. at 165, 381 S.E.2d at 714).

Following *Turner*, we first determine whether the trial court's conclusions of law support its decision to impose sanctions. The trial court did make any relevant conclusions of law in its order, but finding of fact 30 is more properly characterized as a mixed conclusion of law and finding of fact. Generally, "any determination requiring the exercise of judgment . . . or the application of legal principles . . . is more properly classified a conclusion of law." *In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (citations omitted). A finding of fact that is essentially a conclusion of law will be treated as a fully reviewable conclusion of law on appeal. *In re M.R.D.C.*, 166 N.C. App. 693, 697, 603 S.E.2d 890, 893 (2004). Mislabeling of a finding of fact as a conclusion of law is inconsequential if the remaining findings of fact support the conclusion of law. *In re R.A.H.*, 182 N.C. App. 52, 59, 641 S.E.2d 404, 409 (2007). Finding of fact 30 reads as follows:

> The Motion for emergency Custody Order herein was without basis 'in law or in fact and was interposed for an improper purpose. Said Motion was dismissed upon the Motion of the Plaintiff at the conclusion of Defendant's evidence for lack of sufficient evidence to support the claims stated therein. In addition said

Motion was filed for an improper purpose, i.e. to block Plaintiff's scheduled summer visitation. Therefore, Plaintiff is entitled to recover attorney fee's incurred in the defense of said Motion for emergency Custody Order. Plaintiff's attorney incurred 14.11 hours in defending the Motion for emergency Custody Order. Said number of hours was reasonable and necessary considering the allegations set forth in said Motion. Plaintiff's attorney charges $250 per hour in representation of parties to domestic and family law cases which hourly rate is inline with the hourly rate charged by other similarly experienced attorneys in the First Judicial District and therefore the sum of $3,500 in attorney's fees incurred in defending the Motion for emergency Custody Order is reasonable and was necessary.

The first sentence of finding of fact 30 is clearly a conclusion of law, not a finding of fact. That conclusion, that defendant's emergency custody motion "was without basis in law or in fact and was interposed for an improper purpose[,]" supports the trial court's decision to impose sanctions.

Next, we examine whether the trial court's conclusions of law are supported by its findings of fact. A trial court cannot enter an order changing custody *ex parte*

unless the court finds that the child is exposed to a substantial risk of bodily injury or sexual abuse or that there is a substantial risk of bodily injury or sexual abuse or that there is a substantial risk that the child may be abducted or removed from the State of North Carolina for the purpose of evading the jurisdiction of North Carolina courts.

N.C. Gen. Stat. § 50-13.5(d)(3) (2009). In both the hearing and the order, the trial court was clearly focused on defendant's implied allegation that Cody was being sexually abused while in his father's custody. Given the narrow exception set out in the statute, the trial court's focus on Cody's exposure to a substantial risk of sexual abuse was entirely appropriate. Indeed, the trial court explained, in finding of fact 23, that "[t]he emergency Order would never have been issued except for allegations of possible sexual abuse, in that the other allegations contained in the Motion were allegations that the Court was already aware of and had already been presented, in most part, in previous testimony." During the 26 June 2009 hearing, defendant presented evidence by multiple experts in support of her motion, but, as the trial court found in finding of fact 10, a physical examination

of Cody conducted at Children's Hospital of the King's Daughters "revealed no evidence of sexual abuse and resulted in no referral to the Department of Social Services as would be required by law if there were suspicions of sexual abuse." The trial court found, in finding of fact 11, that "a forensic interview was conducted at Kids First, a child advocacy agency in Elizabeth City, from which no evidence of sexual abuse was found." The trial court also found that defendant had filed her emergency custody order on "the first day of Plaintiff's scheduled summer visitation with" Cody after "Plaintiff had previously refused Defendant's request to rearrange the summer vacation." The trial court concluded, in finding of fact 23, that Cody's "statements are consistent with a pattern of continuing alienating behavior. This conclusion seems particularly true in light of the . . . the timing of the emergency Order in to it (examination at CHKD with no finding or suspicion of abuse)." All of these findings, taken together, support the trial court's conclusion that defendant filed the emergency custody motion for an improper purpose.

Finally, we examine whether these findings of fact are supported by sufficient evidence. After reading the 26 June 2009 hearing transcript, we are satisfied that the findings of fact are supported by sufficient evidence. No testimony supported defendant's insinuation that Cody had been sexually abused, and we find testimony to support the other findings cited above. At the end of the hearing, the trial court accurately summarized defendant's evidence:

> So what we're looking at is has Mrs. Lamm carried the burden required to show that there is a substantial risk of bodily injury or sexual abuse.

> And I cannot find that she has done that today.

> Much of the evidence that has been presented is evidence that clearly goes to what is in the best interest of the child in permanent custody and permanent visitation arrangements.

> But it does not—what has been presented today does not rise to the level that North Carolina law requires for the issuance of or the continuation of an emergency custody order.

Having made the three *Turner* determinations in the affirmative, we must uphold the trial court's decision to impose mandatory sanctions under N.C.G.S. § 1A-1, Rule 11(a). We find no abuse of discretion in the trial court's sanction, the award of $3,500.00 in

attorneys' fees to plaintiff. Accordingly, we affirm the trial court's imposition of Rule 11(a) sanctions in its 1 October 2009 order.

## C. Appellate Rules Violations

**[4]** Although neither party has alleged any violations of our Rules of Appellate Procedure, we bring to both parties' attention the inclusion of social security numbers in the record on appeal, in violation of Rule 9(a)(4) of our Rules of Appellate Procedure. *See* N.C.R. App. P. 9(a)(4) (2011) ("Social security numbers shall be deleted or redacted from any document before including the document in the record on appeal."). The record includes no fewer than four different individuals' social security numbers, including a social security number belonging to a minor child. Rule 9(b)(2) specifies that "[i]t shall be the duty of counsel for all parties to an appeal to avoid including in the record on appeal matter not necessary for an understanding of the issues presented on appeal, such as social security numbers referred to in Rule 9(a)(4). The cost of including such matter may be charged as costs to the party or counsel who caused or permitted its inclusion." N.C.R. App. P. 9(b)(2) (2011). We impose no sanction at this time, but we advise counsel for both parties to avoid this misstep in the future.

## III. Conclusion

The order below is affirmed.

Affirmed.

Judges HUNTER, Robert C., and CALABRIA concur.