***********
The undersigned have reviewed the prior Decision and Order based upon the record of the proceedings before Chief Deputy Commissioner Gheen. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives or amend the Decision and Order.
 ***********
The following documents were admitted into evidence at the hearing as:
 EXHIBITS
1. Plaintiff's Exhibit #1: Defendant's Responses To Plaintiff's Request For Production of Documents.
2. Plaintiff's Exhibit #2: Letter from North Carolina Department of Correction to plaintiff dated November 12, 1998.
3. Plaintiff's Exhibit #3: Letter from North Carolina Department of Correction to plaintiff dated October 26, 1998.
4. Defendant's Exhibit #1: Various North Carolina Department of Correction records related to plaintiff's medical treatment.
 ***********
The competent evidence of record engenders the following:
 FINDINGS OF FACT
1. Plaintiff was incarcerated in the North Carolina Department of Correction (hereinafter "NCDOC") at the Blanche Correctional Facility on or about October 3, 1998.
2. Plaintiff filed three Affidavits with the North Carolina Industrial Commission. Collectively, they allege that NCDOC officers intentionally inflicted injury to plaintiff's left hand and NCDOC employees were negligent in medically treating plaintiff for this injury.
3. On October 3, 1998, at approximately 9:30 a.m., an NCDOC officer came to plaintiff's living quarters to escort him to the exercise grounds. Plaintiff was then under close security watch because of the number of administrative infractions. Close custody required plaintiff to be handcuffed while being escorted.
4. The process of handcuffing an inmate under close security requires the inmate to put their arms through the cell door at which time handcuffs are attached. The prisoner then retracts his arms and the cell door is opened.
5. On the occasion at issue, plaintiff placed his hands through the cell door. As one officer affixed the handcuffs another officer activated the electronic control to open the cell door. Plaintiff snatched his arms back to keep them from being wedged in the cell door bars. In exercising the sudden emergency movement, plaintiff hit his left hand on the wall causing immediate pain, particularly the left fifth finger extending toward the base of the palm.
6. Plaintiff alleges that he tried to speak with officers about his injury but his complaint of injury was ignored. He was returned to his cell. The cell door was closed. He contends that he placed his left arm through the cell door in order that the handcuffs could be removed. The cell door was again activated. He jerked his arm back through the door again hitting his hand on the cell wall.
7. Plaintiff contends that NCDOC officers acted intentionally in prematurely opening the cell door on both occasions. An NCDOC investigative report concluded that the opening of the cell door was "inadvertent." The greater weight of the evidence establishes that the plaintiff's cell door was inadvertently and prematurely opened on one occasion resulting in plaintiff's hand being trapped momentarily.
8. Medical staff was not immediately available at the prison unit. Plaintiff reported that he could not open or close his left hand. NCDOC officers observed no swelling or bruising, but transported plaintiff to the Central Prison Emergency Room for evaluation. Plaintiff was transported in leg restraints, waist restraint, and handcuffs, the latter causing discomfort to his injured hand.
9. Healthcare providers at Central Prison had plaintiff's handcuffs removed and examined his hand. Plaintiff specifically requested pain medication. Plaintiff alleges that one of the correction officers escorting him to Central Prison advised the attending physician that plaintiff did not need pain medication and, as a result, he received no medication.
10. An x-ray was ordered. Immediately prior to being moved within Central Prison to have the x-ray conducted, NCDOC officers again handcuffed plaintiff. Plaintiff was disturbed at being handcuffed. Ultimately, plaintiff did not cooperate in having the x-ray performed.
11. Plaintiff was transported back to the Blanche Correctional Facility. He was placed in segregation. Plaintiff was offered medication for his pain, which he initially refused. Medical records indicate that ultimately plaintiff was given and took two administrations of Tylenol and was offered non-prescription pain medications over the next several days. Plaintiff denies that he was given any Tylenol. He contends that his medical records were altered to conceal the truth.
12. Plaintiff underwent an x-ray, performed locally, on October 8, 1998. The x-ray was interpreted as revealing no acute bony injury. Plaintiff requested to be seen by an orthopaedic specialist for therapy, but the request was denied.
13. At trial, plaintiff contends that a deformity in the angulation of the fifth finger PIP joint of his left had, which is plainly visible to the untrained eye, is attributable to his October 3, 1998 injury. The interpretation of the x-ray taken on October, 1998, however, is that the deformity predates the October 3, 1998 injury.
14. Plaintiff did not submit any evidence of the standard for medical care or whether the applicable standard of medical care had been breached under the facts of this civil action.
15. The greater weight of the evidence establishes that plaintiff sustained a contusion to the left hand without fracture that resulted in pain typically associated with this sort of soft tissue injury.
16. Plaintiff has failed to prove by the greater weight of the evidence that the slight angular deformity of the fifth finger PIP joint was caused during the occurrences of October 3, 1998. First, the x-ray interpretation indicates that the deformity probably predated the accident. Second, plaintiff's unsupported testimony that the deformity was caused by the accident is not credible.
17. Plaintiff's credibility was impeached to a substantial degree. Several examples are indicative of apparent exaggerations. Plaintiff testified that he never received any pain medication for his injury. The record clearly discloses that plaintiff was given medication for his pain as attested by two different healthcare providers at the Blanche Correctional Facility. When confronted with the medical records, plaintiff immediately contended that the records had been forged as part of a "cover up."
18. The greater weight of the evidence establishes that plaintiff has sustained no permanent injury but did sustain a soft tissue injury of short duration.
19. The reasonable value of the damages sustained by plaintiff for pain and suffering from the soft tissue injury is one hundred dollars ($100.00).
 ***********
The forgoing findings of fact engender the following:
 CONCLUSIONS OF LAW
1. In ordering plaintiff to place his arms through the cell doors to attach handcuffs, NCDOC officers owed a duty of reasonable care to operate the cell door in a fashion that would not cause injury to plaintiff. The inadvertent activation of the cell door leading to plaintiff's injury constitutes a breach of that duty. Having complied with the lawful commands of NCDOC officers to place his hands through the cell bars, plaintiff was not contributorily negligent. The negligence of NCDOC employees was a proximate cause of the soft tissue injury to plaintiff's left hand. A reasonable sum for the temporary soft tissue injury to plaintiff's left hand is one hundred dollars ($100.00). N.C. Gen. Stat. § 143-291(a).
2. In order to establish a claim of medical negligence, plaintiff must prove by the greater weight of the evidence (a) the applicable standard of care; (b) breach of that standard; (c) proximate cause; and (d) damages.Turner v. Duke University, 325 N.C. 152, 381 S.E.2d 706 (1989). Plaintiff has failed to introduce any evidence of the applicable standard of care or that the standard of care was breached. N.C. Gen. Stat. §143-291(a).
 ***********
The forgoing findings of fact and conclusions of law engender the following:
 ORDER
1. Plaintiff shall have and recover from the NCDOC the sum of one hundred dollars ($100.00) for the injury to his left hand and the NCDOC shall pay plaintiff said sum.
2. Plaintiff's claim for medical negligence must be and is hereby DENIED.
3. NCDOC shall pay the costs of this civil action.
This the 19th day of March 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN