STATE OF NORTH CAROLINA v. TREVOR DEMON HALL, DEFENDANT

No. COA07-335

(Filed 2 October 2007)

**1. Discovery— expert testimony—physician assistant—fact witness—protection from unfair surprise**

The trial court in a common law robbery case did not improperly allow the State to adduce expert testimony from a physician assistant without complying with the discovery requirements for expert witnesses under N.C.G.S. § 15A-903(a)(2), because: (1) although the physician assistant apprised the jury of his diagnosis of the victim's muscle tenderness, an opinion informed by his specialized training and experience, he offered no opinion and brought no expertise to bear as to the subject at hand at defendant's trial; (2) the physician assistant was properly treated as a fact witness for discovery purposes since his opinion as a physician assistant was not germane to the issue before the jury when

neither the fact nor the degree of the victim's injuries was essential to the State's case; and (3) the purpose of discovery is to protect defendant from unfair surprise, and the State provided the defense with records of the victim's appointment with the physician assistant detailing her diagnosis and treatment.

## 2. Discovery— expert testimony—detective—act of collecting latent fingerprints from surface—fact witness

The trial court in a common law robbery case did not improperly allow the State to adduce expert testimony from a detective without complying with the discovery requirements for expert witnesses under N.C.G.S. § 15A-903(a)(2), because: (1) our Supreme Court has already held that a witness does not give expert testimony in merely describing the act of collecting latent fingerprints from a surface; and (2) the detective was properly treated as a fact witness for discovery purposes when he did not purport to compare defendant's fingerprints with the latent prints, made no attempt to express an opinion, and was asked no questions requiring him to do so.

Appeal by defendant from judgment dated 24 July 2006 by Judge William C. Gore, Jr., in Columbus County Superior Court. Heard in the Court of Appeals 24 September 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Charles E. Reece, for the State.*

*Thorsen Law Office, by Haakon Thorsen, for defendant-appellant.*

BRYANT, Judge.

Trevor Demon Hall (defendant) appeals from a judgment dated 24 July 2006, and entered upon his conviction for the offense of common law robbery. For the reasons stated herein, we find defendant received a fair trial, free from error.

### Facts

Complainant Robin Compos testified that on the afternoon of 1 November 2005, she went to visit her friend, Cathy Starling, who was at home recovering from surgery. Compos planned to drive Starling to the bank so that she could cash her check and pay her rent. When Compos arrived at the residence, she found two men and a woman with Starling. Compos recognized one of the men as "Turbo[,]" who

was attempting to collect a debt from Starling. With Turbo were defendant and a woman, neither of whom Compos knew.

Compos drove Starling to a BB&T bank in Riegelwood, North Carolina, where Starling cashed her check. Turbo and his associates followed them in a second car. After paying her rent at a nearby credit union, Starling got into an argument with Turbo. She then returned to the car and handed Compos the bank envelope containing the remainder of the proceeds of her check.

Upon returning to Starling's house, Turbo and the unknown woman joined Starling in a bedroom, while defendant and Compos waited in the living room. Defendant walked out of the living room briefly, whereupon his two associates emerged from the bedroom and exited the house. When defendant came back to the living room, Compos "told him that his ride had just left him." In defendant's presence, Starling asked Compos for the bank envelope and removed some of the money. Starling then gave the envelope back to Compos and told her to "hold it for her." Compos put the envelope in her left front pants' pocket. Starling went into the bathroom.

Visibly upset by his predicament, defendant forced open the bathroom door and yelled at Starling. Compos threatened to call the police and told defendant that she would "take him wherever he's needing to go" if he left Starling alone. Compos and defendant got into her car and drove for approximately three miles toward Whiteville, North Carolina. After directing Compos into a driveway, defendant put the car's gear shift into park, "started beating [her] in the head and started saying, 'Give me the money, give me the money.'" As Compos tried to protect herself, defendant ripped the side of her pants and took the envelope from her pocket. He then "calmly got out of the car and walked off."

Compos drove to the home of her former co-worker and called 911. When police arrived, she told them about the robbery and provided a description of her assailant. The next morning, she sought treatment at the Riegelwood Medical Clinic for blurred vision in her right eye and "[s]harp, throbbing pains going through the side of [her] temple, and into [her] eye." The doctor found that she had "muscular swelling in that eye" and temple and prescribed "some really strong medication for the pain[.]"

Three or four days after the robbery, a detective showed Compos an array of photographs and asked if she could identify her assailant.

Compos selected defendant's photograph as depicting the man who assaulted her and stole Starling's money from her pocket on 1 November 2005. Compos also identified defendant in court as the robber.

Daniel Boyes, a physician's assistant, examined Compos at Riegelwood Medical Clinic on the morning of 2 November 2005. Compos told Boyes "that she had been assaulted, struck multiple times . . . in the right temporal region[,]" and "complained of a headache, blurred vision, tenderness to the scalp and neck pain." Over defendant's objection, Boyes testified that his examination of Compos revealed "some swelling and tenderness to the right side of her head" as well as "exquisit[e]" tenderness in the musculature of the left side of her neck.

Columbus County Sheriff's Detective Adam Coleman testified that he spoke to Compos on the afternoon of 1 November 2005. She was "very upset" and "having problems breathing[,]" and told him she had been robbed of money while giving her assailant a ride in her car after visiting a friend's house. Compos reported that her assailant hit her in the face and head and ripped her pants pocket while sitting in the front passenger seat of her car. Over defendant's objection, Coleman also testified that he dusted the front passenger's side door of Compos' car for fingerprints and successfully lifted four latent prints. He learned how to lift latent prints as part of his Basic Law Enforcement Training Program, and had performed the activity "a lot" since becoming a deputy in 2003.

Detective Mack Brazelle and Latent Print Examiner Angela Berry of the Columbus County Sheriff's Office testified as experts in fingerprint identification. After comparing defendant's fingerprints with the latent print lifted from the passenger's side door of Compos' car, both experts averred that the latent print found on the car belonged to defendant. Brazelle found "no possibility" that the latent print belonged to anyone other than defendant; and Berry was "[one] hundred percent confident" in her identification. Brazelle also confirmed that Compos selected defendant's photograph from a lineup he showed her on 3 November 2005.

---

[1] On appeal, defendant claims the trial court erred by allowing the State to adduce expert testimony from physician's assistant Boyes and Detective Coleman without complying with the discovery requirements for expert witnesses set forth in N.C. Gen. Stat. § 15A-903(a)(2) (2005). Relying on our holding in *State v.*

*Blankenship*, 178 N.C. App. 351, 631 S.E.2d 208 (2006), he faults the court for allowing Boyes to testify regarding his medical training and experience and his diagnosis of Compos' condition on the morning of 2 November 2005. Similarly, defendant notes that the court allowed Agent Coleman to testify about his training and the methodology he employed in lifting the latent prints from Compos' car. Because neither Boyes nor Colemen were designated as expert witnesses in the State's discovery materials, in accordance with N.C. Gen. Stat. § 15A-903(a)(2), defendant asserts that he "must receive a new trial." We disagree.

### Standard of Review

"The determination of whether a witness' testimony constitutes expert testimony is one within the trial court's discretion, and will not be reversed on appeal absent an abuse of discretion." *Blankenship*, 178 N.C. App. at 354-55, 631 S.E.2d at 211 (citing *State v. Morgan*, 359 N.C. 131, 160, 604 S.E.2d 886, 904 (2004), *cert. denied*, 546 U.S. 830, 163 L. Ed. 2d 79 (2005)).

### I

Rule 702(a) of the North Carolina Rules of Evidence provides that "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion." N.C. Gen. Stat. § 8C-1, Rule 702(a) (2005). By contrast, a lay witness may offer an opinion only where it is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2005).

Having agreed to engage in reciprocal voluntary discovery as contemplated by N.C. Gen. Stat. § 15A-902, the State was obliged to undertake the following disclosures regarding its expert witnesses:

Give notice to the defendant of any expert witnesses that the State reasonably expects to call as a witness at trial. Each such witness shall prepare, and the State shall furnish to the defendant, a report of the results of any examinations or tests conducted by the expert. The State shall also furnish to the defendant the expert's curriculum vitae, the expert's opinion, and the underlying basis for that opinion. The State shall give the notice and fur-

nish the materials required by this subsection within a reasonable time prior to trial, as specified by the court.

N.C. Gen. Stat. § 15A-903(a)(2) (2005). In order to qualify as an expert, a witness need only be found "better qualified than the jury as to the subject at hand, with the testimony being 'helpful' to the jury." *State v. Davis*, 106 N.C. App. 596, 601, 418 S.E.2d 263, 267 (1992) (citing *State v. Huang*, 99 N.C. App. 658, 663, 394 S.E.2d 279, 282, *disc. review denied*, 327 N.C. 639, 399 S.E.2d 127 (1990)), *disc. review denied*, 333 N.C. 347, 426 S.E.2d 710 (1993).

In *Blankenship*, the defendant was charged with possession of precursor chemicals after police found boxes of matches and Sudafed and bottles of iodine, hydrogen peroxide, and rubbing alcohol in the bed of his pickup truck. *Blankenship*, 178 N.C. App. at 352, 631 S.E.2d at 209. At trial, "the State proffered testimony by State Bureau of Investigation Special Agent Kenneth Razzo ("Agent Razzo") as to the manufacturing process of methamphetamine and the ingredients used." *Id.* The defendant objected to Agent Razzo's testimony based on the State's failure to provide notice and other discovery required for an expert witness under N.C. Gen. Stat. § 15A-903(a)(2). *Id.* at 353, 631 S.E.2d at 209. The trial court overruled the objection, concluding "that since Agent Razzo would not be giving his opinion as to the specific facts of defendant's case, and he had not performed any tests or examinations on any of the evidence in the case, he would be permitted to testify as a fact witness." *Id.* at 355, 631 S.E.2d at 211.

On appeal, we held the trial court abused its discretion by treating Agent Razzo as a fact witness rather than an expert. *Id.* at 356, 631 S.E.2d at 211. In reaching this conclusion, we assessed both the specialized nature of Agent Razzo's testimony and the nexus between his field of expertise and the issue before the jury, as follows:

> Although the trial court permitted Agent Razzo to testify as a so-called lay witness, we hold that he in fact qualified as, and testified as, an expert witness. The jury was permitted to hear testimony about his extensive training and experience in the process of manufacturing methamphetamine and clandestine laboratory investigations, along with his specialized knowledge of the manufacturing process of methamphetamine. Also, the State specifically tendered Agent Razzo as an expert witness, and the trial court failed to take any action to remedy the State's attempt to tender Agent Razzo as an expert. We hold that based on the presentation of evidence concerning Agent Razzo's extensive

training and experience, he was "better qualified than the jury as to the subject at hand," and he testified as an expert witness.

*Id.* (citing *Davis*, 106 N.C. App. at 601, 418 S.E.2d at 267). Because the State had not provided defendant with the required discovery related to its expert witness under N.C. Gen. Stat. § 15A-903(a)(2), we awarded defendant a new trial. *Id.* at 356, 631 S.E.2d at 212.

Here, in overruling defendant's *Blankenship* objection to Boyes' testimony, the trial court found that he was testifying as a fact witness for purposes of N.C. Gen. Stat. § 15A-903(a), notwithstanding his expertise as a physician's assistant. We agree. Although Boyes apprised the jury of his diagnosis of Compos' muscle tenderness—an opinion informed by his specialized training and experience—he offered no opinion and brought no expertise to bear "as to the subject at hand" at defendant's trial. *Davis*, 106 N.C. App. at 601, 418 S.E.2d at 267. Unlike Agent Razzo, whose specialized knowledge helped the jury to identify the materials found in the Blankenship's truck as precursors to methamphetamine, Boyes' opinion as a physician's assistant was not germane to the issue before the jury. Therefore, the trial court did not abuse its discretion in treating Boyes as a fact witness for discovery purposes. *See, e.g., Turner v. Duke Univ.*, 325 N.C. 152, 167-68, 381 S.E.2d 706, 715-16 (1989) (distinguishing between a physician testifying as a fact witness and as an expert witness for purposes of discovery under N.C. R. Civ. P. 26(b)(4)).

Further, we find no abuse of discretion by the trial court under the particular facts of this case. The offense of common law robbery does not require the application of actual force or the infliction of injury upon the victim. *State v. Wilson*, 26 N.C. App. 188, 190, 215 S.E.2d 167, 168 (1975). Accordingly, neither the fact nor the degree of Compos' injuries was essential to the State's case. Moreover, Boyes offered no opinion regarding the etiology of Compos' symptoms, or of the consistency between her injuries and her account of the robbery. Rather, his testimony served primarily to corroborate Compos' claim that she obtained medical treatment on 2 November 2005. Even if the court had excluded Boyes' opinion testimony, he would have been free to offer factual testimony confirming his treatment of Compos on 2 November 2005, corroborating her statements to him, and stating the treatment he prescribed for her. Finally, we note that "[t]he purpose of discovery under our statutes is to protect the defendant from unfair surprise by the introduction of evidence he cannot anticipate." *Blankenship*, 178 N.C. App. at 354, 631 S.E.2d at 210 (citation and quotations omitted). The record reflects that the State provided the

defense with records of Compos' appointment with Boyes at Reigelwood Medical Clinic on 2 November 2005, detailing her diagnosis and treatment. This assignment of error is overruled.

*II*

[2] Defendant raised a similar objection to Deputy Coleman's testimony about his lifting of the latent fingerprints from Compos' car. Citing *Blankenship*, defendant averred that the State failed to designate or qualify Deputy Coleman as an expert witness, or to provide the defense with Coleman's *curriculum vitae* pursuant to N.C. Gen. Stat. § 15A-903(a)(2). The trial court overruled defendant's objection, finding that Deputy Coleman "was a fact witness and that he entered no expert opinions requiring him—requiring the State to provide a [*curriculum vitae*] pursuant to *State v*[.] *Blankenship*."

We again find no abuse of discretion by the trial court. Our Supreme Court has held that a witness does not give expert testimony in merely describing the act of collecting latent fingerprints from a surface:

> Admittedly, a person who lifts latent prints must know how to perform that procedure. But this does not mean he must be qualified as an "expert." The basic reason for qualifying a witness as an expert is to insure that he is better qualified than the jury to form an opinion and draw appropriate inferences from a given set of facts.

*State v. Shore*, 285 N.C. 328, 340, 204 S.E.2d 682, 690 (1974) (citation omitted); *see also State v. Caddell*, 287 N.C. 266, 277, 215 S.E.2d 348, 355 (1975). Inasmuch as Deputy Coleman did not purport to compare defendant's fingerprints with the latent prints, "made no attempt to express an opinion and was asked no questions requiring him to do so[,]" he was properly treated as a fact witness for discovery purposes. *Shore*, 285 N.C. at 340, 204 S.E.2d at 690. We note that the State provided the defense with proper discovery regarding its two expert fingerprint analysts, Brazelle and Berry.

The record on appeal includes two additional assignments of error which are not addressed by defendant in his brief to this Court. By Rule, we deem them abandoned. N.C. R. App. P. 28(b)(6).

No error.

Judges WYNN and ELMORE concur.