IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA15-541

 Filed: 17 May 2016

Durham County, No. 13 SP 721

IN THE MATTER OF: CAROLE WINIFRED CRANOR, Respondent.

 Appeal by Appellant Lynn Andrews from orders entered 12 September 2014

and 17 December 2014 by Judge George B. Collins, Jr., in Durham County Superior

Court. Heard in the Court of Appeals 4 November 2015.

 Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene and Tobias S.
 Hampson, for the Appellant Lynn Andrews.

 West Law Offices, P.C., by James P. West, for the Petitioner-Appellee Frank
 Taylor Cranor.

 DILLON, Judge.

 Lynn Andrews (“Attorney Andrews”) – who was retained by Carole Cranor in

this incompetency proceeding – appeals from an order entered 12 September 2014

(the “September Order”) in which the trial court imposed judicial discipline on her,

pursuant to Rule 11 and its inherent authority, and ordered her to pay attorneys’ fees

to the Petitioner Frank Cranor and his attorney (“Attorney West”). Attorney

Andrews also appeals two subsequent orders entered 17 December 2014 (the

“December Orders”) in which the trial court set the amount of the attorneys’ fee award

and denied Attorney Andrews’ Rule 60 motion for relief from the September Order.
 IN RE CRANOR

 Opinion of the Court

 I. Background

 This matter involves an incompetency proceeding commenced by Frank Cranor

to have his sister Carole Cranor declared incompetent and to have him appointed as

her general guardian. Carole Cranor is a retired pharmacist residing in Durham who

was diagnosed with early onset dementia. At the time of her diagnosis, Carole and

her brother Frank Cranor were not close. There is evidence that they had a

contentious relationship due to a past disagreement concerning the care of their

mother and that they had very little contact with each other.

 Carole Cranor consulted her long-time, close attorney-friend, Harriet Hopkins

(“Ms. Hopkins”), for help in choosing a long-term care facility and in getting her legal

and financial affairs in order. Carole Cranor also appointed Ms. Hopkins as her

attorney-in-fact via a durable power of attorney (“DPOA”) that Ms. Hopkins drafted.

The DPOA that Ms. Hopkins drafted contained a gifting provision which allowed Ms.

Hopkins to make gifts to herself from Carole Cranor’s estate. However, there is no

evidence that Ms. Hopkins ever made any such gifts, and the DPOA was subsequently

replaced by another DPOA drafted by an independent attorney.

 Frank Cranor, who resides in Arkansas, learned of his sister’s deteriorating

condition and became aware that Ms. Hopkins was acting as Carole’s attorney-in-

fact. On 3 June 2013, Frank Cranor filed the petition to have his sister Carole

 -2-
 IN RE CRANOR

 Opinion of the Court

adjudicated incompetent and requested that he be appointed as her general guardian,

citing a concern that his sister was being taken advantage of by Ms. Hopkins.

 On 8 June 2013, Carole Cranor hired Attorney Andrews to represent her in the

incompetency proceeding.1

 After a period of litigation, which included discovery and a series of motions,

Attorney Andrews was successful in obtaining a Rule 12(b)(6) dismissal of Frank

Cranor’s incompetency petition. This appeal, however, is unrelated to the dismissal

or the issue of Carole Cranor’s competency. Rather, this appeal arises from orders

entered after the dismissal of the incompetency petition.

 Following the dismissal, Attorney Andrews filed motions seeking attorneys’

fees, costs, and sanctions against Frank Cranor and Attorney West. In these motions,

Attorney Andrews alleged that Frank Cranor’s incompetency petition did not contain

justiciable issues of fact or law, and thus was non-justiciable. In response, Frank

Cranor and Attorney West filed motions for attorneys’ fees, costs, and Rule 11

sanctions against Attorney Andrews, contending that Attorney Andrews’ motions for

fees, costs, and sanctions were filed in violation of Rule 11 because they were not well

 1 The clerk had appointed Attorney Andrews to serve as Carole Cranor’s guardian ad litem on
3 June, the day Frank Cranor filed his petition. However, Attorney Andrews promptly withdrew,
citing a conflict of interest, based on a previous discussion she had had with Ms. Hopkins regarding
Carole Cranor’s situation. When Attorney Andrews was hired by Carole Cranor directly, Frank
Cranor petitioned to have her disqualified; however, his motion was denied.

 -3-
 IN RE CRANOR

 Opinion of the Court

grounded in fact and were filed for the purpose of harassing Frank Cranor and

Attorney West.

 The clerk denied all motions. Specifically, the clerk determined that Frank

Cranor’s incompetency petition was justiciable and that Attorney Andrews had acted

in good faith in seeking fees, costs, and sanctions.2 All parties appealed to superior

court.

 Following a hearing on the matter, the superior court entered its September

Order denying Attorney Andrews’ motions but allowing Attorney West’s motion for

sanctions against Attorney Andrews. Specifically, in allowing Attorney West’s

motions, the court ordered that (1) Attorney Andrews be prohibited from accepting

any fees or expenses from Carole Cranor; (2) Attorney Andrews be removed as

attorney for Carole Cranor and be barred from representing her in any action or

proceeding in any court in the State of North Carolina; and (3) Attorney Andrews pay

the attorneys’ fees and costs of Frank Cranor and Attorney West incurred in

defending against Attorney Andrews’ motions for fees, costs and sanctions, with the

amount of the award to be determined in a future hearing.3

 In December 2014, the superior court entered its December Orders in which it

denied Attorney Andrews’ Rule 60(b) motion for relief from the September Order and

 2
 The Clerk did order Frank Cranor to pay the costs of a multidisciplinary evaluation of Carole
Cranor ordered by the court that he sought as part of the incompetency proceeding.
 3 The trial court also requested that the State Bar open an investigation into Attorney

Andrews’ conduct in its September Order.

 -4-
 IN RE CRANOR

 Opinion of the Court

set the amount of attorneys’ fees and costs awarded in the September Order at

$122,987.72. In January 2015, Attorney Andrews filed her notice of appeal to this

Court from the September Order and from both December Orders.

 II. Jurisdiction

 As a preliminary matter, we address Frank Cranor’s contention that this Court

lacks jurisdiction to consider Attorney Andrews’ arguments concerning the

September Order. Specifically, Frank Cranor contends that the September Order

was a final order (notwithstanding the later December Orders) and that Attorney

Andrews failed to file her notice of appeal from that order within the thirty (30) day

period prescribed by Rule 3 of the North Carolina Rules of Civil Procedure. See N.C.

R. App. P. 3(c)(1); N.C. R. Civ. P. 58. We disagree, and hold that we have jurisdiction

to consider Ms. Andrews’ arguments regarding the September Order.

 Frank Cranor’s argument turns on whether the September Order was a “final”

order, notwithstanding the subsequent December Orders. Our Supreme Court has

held that “[a]n order that completely decides the merits of an action [] constitutes a

final judgment for purposes of appeal even when the trial court reserves for later

determination collateral issues such as attorney’s fees and costs.” Duncan v. Duncan,

366 N.C. 544, 546, 742 S.E.2d 799, 801 (2013).

 The gist of Frank Cranor’s argument is that the December Orders dealt only

with collateral matters and, therefore, did not affect the status of the September

 -5-
 IN RE CRANOR

 Opinion of the Court

Order as being a “final” order. However, we note that the September Order, itself,

did not decide any substantive issue concerning Carole Cranor’s competency, but

rather only dealt with “collateral issues,” including an award of attorneys’ fees. See

Bryson v. Sullivan, 330 N.C. 644, 653, 412 S.E.2d 327, 331 (1992) (noting that

sanctions are collateral issues that “require consideration after the action has been

terminated”). Where an order imposes judicial discipline, an appeal from such order

is interlocutory if the order involves the imposition of attorneys’ fees and if the

amount of the fee award was not set in the order. See, e.g., Sanders v. State Pers.

Comm’n, ___ N.C. App. ___, ___, 762 S.E.2d 850, 854 (2014) (stating that “an appeal

of the [] issue of attorney fees, itself, is interlocutory if the trial court has not set the

amount to be awarded”).

 Because the September Order was an order for attorneys’ fees which did not

set the amount of the fee award, instead leaving the issue for later determination, it

was not a final order. Rather, the December Order, which did set the amount of the

attorneys’ fees, was the final order. Thus, since Attorney Andrews noticed her appeal

from the December Orders within the time allowed by our Rules, we reject Frank

Cranor’s argument concerning our jurisdiction and address the merits of Attorney

Andrews’ appeal.

 III. Analysis

 A. Rule 11 Sanctions

 -6-
 IN RE CRANOR

 Opinion of the Court

 We first review the superior court’s award based on Rule 11. N.C. Gen. Stat.

§ 1A-1, Rule 11 (2014). Our Supreme Court has held that a trial court’s decision to

impose sanctions under Rule 11 “is reviewable de novo as a legal issue.” Turner v.

Duke Univ., 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989). That is not to say that

the reviewing court reweighs the evidence and makes new factual findings. Rather,

the Supreme Court instructs that “[i]n the de novo review, the appellate court will

determine (1) whether the trial court’s conclusions of law support its judgment or

determination, (2) whether the trial court’s conclusions of law are supported by its

findings of fact, and (3) whether the findings of fact are supported by a sufficiency of

the evidence.” Id. The Supreme Court further instructs that if the appellate court

makes these determinations in the affirmative, “it must uphold the trial court’s

decision to impose or deny the imposition of mandatory sanctions under [Rule 11].”

Id. The trial court’s decision concerning the type of sanction(s) to impose, however, is

reviewed for an abuse of discretion. Id.

 Based on our review, we hold that Rule 11 sanctions against Attorney Andrews

were not warranted in this case.

 First, many of the superior court’s findings are not supported by the evidence.

For instance, the court found that Attorney Andrews “has repeatedly argued to [the

superior court] that because [Frank Cranor] refused to consent to a limited

guardianship with Harriet Hopkins as the guardian, that he was seeking to take

 -7-
 IN RE CRANOR

 Opinion of the Court

away all of [Carole Cranor’s] rights. This argument is a misrepresentation of the

facts and the law.” However, in his petition, Frank Cranor specifically stated that he

was seeking to be named his sister’s general guardian, which would legally allow him

great control over Carole’s life. Such relief, if granted, would have deprived Carole of

her authority to choose Ms. Hopkins as her guardian or attorney-in-fact. Throughout

the litigation, the record shows that Mr. Cranor persisted in objecting to Ms. Hopkins

acting as Carole’s attorney-in-fact. Therefore, we hold that this finding is without

evidentiary support.

 The superior court also found that Attorney Andrews admitted that her client

Carole Cranor was incompetent, which would tend to show that Attorney Andrews

recognized the justiciability of Frank Cranor’s petition. However, the record clearly

shows that Attorney Andrews conceded only that her client had limited capacity

related to “early stage dementia,” maintaining that Carole was otherwise competent

to make decisions concerning her own affairs, including the decision to name her

attorney-in-fact.4 Therefore, we hold that this finding is also without evidentiary

support.

 Further, the superior court found that Attorney Andrews continued to insist

during the proceeding that there was no evidence of wrongdoing by Carole’s attorney-

in-fact, Ms. Hopkins. It is true that Ms. Hopkins’ drafting of a DPOA, which

 4 Although not central to our analysis, we note that the evidence produced during discovery
clearly suggested that Carole did have substantial capacity and was not totally incompetent.

 -8-
 IN RE CRANOR

 Opinion of the Court

contained a gifting provision in her favor, may have constituted unethical conduct.

However, the record does not disclose that Attorney Andrews ever contested this

point or made any misrepresentation concerning this point. Rather, Attorney

Andrews’ statements on this issue are supported by another finding by the superior

court – which is supported by the evidence – that although Ms. Hopkins had violated

the Professional Rules of Conduct in drafting the gifting provision in her favor,

“[t]here is no evidence that Ms. Hopkins ever received anything of value or otherwise

benefitted from the DPOA.”

 The superior court’s concern seemingly was that Attorney Andrews was acting

for the benefit of Ms. Hopkins and not for the benefit of her client, Carole Cranor. It

is true that Attorney Andrews’ advocacy in this matter had the potential of benefiting

Ms. Hopkins by allowing her to continue serving as Carole’s attorney-in-fact and/or

as a limited guardian appointed by the court. However, Attorney Andrews’ advocacy

benefited her client as well, in that she was acting in accordance to Carole’s wishes:

that Ms. Hopkins, in whom she had great trust, remain in charge of her affairs during

her decline and that her brother, with whom she had a strained relationship, would

have no authority over the running of her affairs.

 We hold that the evidence in the record and the superior court’s findings which

are supported by the evidence support a conclusion that Rule 11 sanctions are not

warranted in this case, as found by the clerk in the initial hearing on the matter. We

 -9-
 IN RE CRANOR

 Opinion of the Court

agree with the determination by the clerk that the petition filed by Frank Cranor was

justiciable and that Attorney Andrews’ motions were properly denied. However, we

also conclude that Attorney Andrews acted in good faith and in the interest of

zealously advocating for her client. We therefore agree with the clerk that “remarks

and pleadings made and filed by [Attorney Andrews] in this matter were made in

apparent good faith and do not rise to a level of culpability sufficient to justify

imposition of sanctions pursuant to [Rule 11] nor to trigger payment of costs.”

 Specifically, Attorney Andrews could reasonably have inferred from Frank

Cranor’s original and amended petitions for adjudication of Carole Cranor’s

incompetence that Frank Cranor was attempting to gain control over his sister’s

assets by having her declared incompetent and having himself named as her general

guardian, and that the petitions were filed without a proper basis in fact. The petition

was eventually dismissed for failure to state a claim.5 Frank Cranor represented in

his petition that he had first-hand knowledge of Carole’s condition though there is

evidence that he had no first-hand knowledge of her condition, in that he had had

very little contact with her for many years.

 Further, Attorney Andrews could reasonably have inferred that Frank Cranor

was not proceeding in good faith, based in part on his attempt to have Carole

 5 We note that while the grant of a 12(b)(6) motion is not sufficient to establish the absence of
a justiciable issue, it can serve as evidence of the absence of a justiciable issue. Sunamerica Fin. Corp.
v. Bonham, 328 N.C. 254, 259, 400 S.E.2d 435, 439 (1991).

 - 10 -
 IN RE CRANOR

 Opinion of the Court

evaluated by his chosen psychiatrist without notifying Attorney Andrews.

Specifically, on the morning of 8 June 2013, Attorney Andrews e-mailed Attorney

West that she had been retained by Carole and that she objected to any evaluation of

her client that day by Frank Cranor’s chosen psychiatrist. However, whether

Attorney West was aware of Attorney Andrews’ e-mail or not, Attorney West

appeared at Carole’s residential care facility later that same day along with the

psychiatrist for the purpose of performing an exam on Carole.

 Finally, based on overwhelming evidence that Carole Cranor still retained

significant capacity, Attorney Andrews could have reasonably concluded that Frank

Cranor pursued his appeal of the clerk’s dismissal of his amended petition after a

point where he should reasonably have become aware that the pleading no longer

contained a justiciable issue. Sunamerica, 328 N.C. at 258, 400 S.E.2d at 438; see

also Bryson v. Sullivan, 330 N.C. 644, 658, 412 S.E.2d 327, 334 (1992) (“[O]nce the

case has become meritless, failure to dismiss or further prosecution of the action may

result in sanctions [under Rule 11] or pursuant to the inherent power of the court.”).

Thus, we do not believe that the trial court’s finding that “the record . . . clearly

establishes the justiciability of the issues presented by the petition” supports the trial

court’s conclusion of law that “no reasonably competent attorney could conclude that

the issues brought by [Frank Cranor] are non-justiciable in this proceeding.”

 - 11 -
 IN RE CRANOR

 Opinion of the Court

 Again, we do not take a position regarding Attorney Andrews’ beliefs about the

motivation of Frank Cranor and Attorney West in filing the petition or in prosecuting

this matter. Indeed, Carole was suffering from dementia, and there was a concern

regarding the initial DPOA which contained the self-gifting provision in favor of Ms.

Hopkins. We simply conclude that the unchallenged findings and uncontroverted

evidence in the record supports a conclusion that Attorney Andrews acted in good

faith in filing the Rule 11 motion and the motion for attorneys’ fees. Accordingly, we

hold that the superior court erred in imposing sanctions on Attorney Andrews in

response to both motions.

 B. Sanctions Imposed in the Trial Court’s Inherent Authority

 In addition to the imposition of sanctions pursuant to Rule 11, the superior

court imposed sanctions against Attorney Andrews in the exercise of its inherent

authority. These sanctions included (1) prohibiting Attorney Andrews from collecting

any fees or expenses from Carole Cranor, and (2) removing Attorney Andrews as

Carole Cranor’s attorney. The proper standard of review for acts by the trial court in

the exercise of its inherent authority is abuse of discretion. In re Key, 182 N.C. App.

714, 721, 643 S.E.2d 452, 457 (2007).

 The superior court prohibited Attorney Andrews from collecting fees or

expenses from Carole Cranor pursuant to the provisions of Indigent Defense Services

(“IDS”) Rule 1.9(e), which governs the appointment of counsel to indigent clients and

 - 12 -
 IN RE CRANOR

 Opinion of the Court

also applies to guardian ad litem appointments in certain situations. This was

improper and constitutes an abuse of discretion. IDS Rule 1.9(e) addresses a

situation where an attorney is appointed as counsel for an indigent client,

withdraws, and then becomes privately retained as counsel for the same client. See

Commentary to IDS Rule 1.9(e) (2014). That situation is markedly different from the

facts of this case, where Ms. Andrews was appointed as Ms. Cranor’s guardian ad

litem and where the record clearly shows that Ms. Cranor was not indigent. IDS Rule

1.9(e) clearly does not apply in the present situation.

 Additionally, we do not believe the record supports the trial court’s removal of

Attorney Andrews as counsel for Carole Cranor in this matter, or its order preventing

Carole Cranor from retaining Attorney Andrews in any future matter.6 As previously

discussed, many of the findings used by the trial court to support its conclusions were

not supported by the evidence in the record. We do not believe that the undisturbed

findings of the trial court support this sanction.

 IV. Conclusion

 In conclusion, we reverse the September Order and December Orders to the

extent that they impose sanctions on Attorney Andrews pursuant to Rule 11 and the

trial court’s inherent authority, including the imposition of attorneys’ fees and costs.

 6 It is not within the trial court’s inherent authority to place a limitation on a lawyer’s right to
practice law for an indefinite period of time. See Matter of Hunoval, 294 N.C. 740, 744, 247 S.E.2d
230, 233 (1977).

 - 13 -
 IN RE CRANOR

 Opinion of the Court

Furthermore, we reverse the September Order to the extent that it orders that the

cost of the multidisciplinary evaluation of Carole Cranor be borne by the Department

of Health and Human Services and reinstate the order of the clerk requiring that

Frank Cranor bear the cost. See N.C. Gen. Stat. § 35A-1116(b)(3) (requiring that

when a respondent is not adjudicated incompetent, the cost of a multidisciplinary

evaluation may be taxed against either party in the court’s discretion).7 These Orders

are otherwise affirmed.

 AFFIRMED IN PART AND REVERSED IN PART.

 Judge ZACHARY concurs.

 Judge HUNTER, JR., concurs in part and dissents in part by separate

 opinion.

 7Whether to tax the cost of the evaluation to Frank Cranor pursuant to N.C. Gen. Stat. § 35A-
1116(b)(3) was within the discretion of the clerk. Here, since the superior court did not reverse the
dismissal of the incompetency petition, the superior court’s review of the clerk’s order taxing costs of
the evaluation was for an abuse of discretion. There is nothing in the record which would support a
conclusion that the clerk abused its discretion in taxing the costs of the evaluation to Frank Cranor.

 - 14 -
 No. COA15-541 – In re Cranor

 HUNTER, JR., Robert N., Judge, concurring in part and dissenting in part.

 I agree with the majority that this Court has jurisdiction to hear Appellant’s

appeal. However, I must respectfully dissent from the majority’s analysis in favor of

affirming the trial court.

 “The trial court’s decision to impose or not to impose mandatory sanctions

under N.C.G.S. § 1A-1, Rule 11(a) is reviewable de novo as a legal issue. In the de

novo review, the appellate court will determine (1) whether the trial court’s

conclusions of law support its judgment or determination, (2) whether the trial court’s

conclusions of law are supported by its findings of fact, and (3) whether the findings

of fact are supported by a sufficiency of the evidence. If the appellate court makes

these three determinations in the affirmative, it must uphold the trial court’s decision

to impose or deny the imposition of mandatory sanctions under N.C.G.S. § 1A-1, Rule

11(a).” Turner v. Duke Univ., 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989). Second,

“in reviewing the appropriateness of the particular sanction imposed, an ‘abuse of

discretion’ standard is proper because ‘[t]he rule’s provision that the court “shall

impose” sanctions for motions abuses . . . concentrates [the court’s] discretion on the

selection of an appropriate sanction rather than on the decision to impose sanctions.’”

Id. (quoting Westmoreland v. CBS, Inc., 770 F.2d 1168, 1174 (D.C. Cir. 1985)).

 The majority contends “many of the superior court’s findings are not supported

by the evidence.” A full review of the record shows the following, in addition to the

facts set forth by the majority.
 IN RE CRANOR

 HUNTER, JR., Robert N., J., concurring in part and dissenting in part

 Dementia runs in Frank Cranor’s (“Petitioner”) family. His mother and

maternal aunt struggled with the disease, and he is aware that he and his sister,

Carole Cranor (“Respondent”), face an increased likelihood of suffering from the

disease. In 2000, Respondent began complaining of memory issues to Petitioner. In

2006, Respondent and Petitioner were emotionally strained when their mother’s

health deteriorated. Respondent was tasked with managing her mother’s affairs, but

her declining capacity failed her as a caretaker, and Petitioner took over as his

mother’s caretaker, which caused some turmoil.

 According to Petitioner, he and Respondent reconciled in 2009. Sometime in

2010–2011, Respondent told Petitioner she had quit her job and collected disability

due to her memory problems. Petitioner visited Respondent in 2011, and he

discovered she had hygiene issues because she did not remember to shower. He grew

concerned for her, but had confidence that Respondent’s ex-husband was caring for

her.

 Respondent’s memory became significantly worse in 2012–2013. In April 2013,

Respondent’s ex-husband called Petitioner and told him that Respondent had fallen

and her friend and attorney, Harriet Hopkins (“Hopkins”), had taken her to the

hospital. Then, Respondent learned that Hopkins “had taken control of [Respondent’s

personal affairs and [] estate” by drafting a durable power of attorney document that

gave Hopkins “the unilateral right to gift to herself any or all of [Respondent’s]

 2
 IN RE CRANOR

 HUNTER, JR., Robert N., J., concurring in part and dissenting in part

property without any duty to provide an accounting to anyone.” This shocked

Petitioner and made him feel that Respondent’s “personal and financial well-being

were in too much jeopardy to continue to refrain from taking action to protect her

from herself and others, particularly [] Hopkins.”8

 Respondent was discharged from the hospital and admitted to an assisted

living facility. After some time, Petitioner called a nursing assistant to check on

Respondent and she said Respondent’s condition was “poor.”

 On 3 June 2013, Petitioner filed a petition9 to have Respondent adjudicated

incompetent and have a general guardian appointed to protect her. Petitioner

nominated himself to be Respondent’s general guardian but he also contacted

guardian ad litem (“GAL”) Kelly Black-Oliver, and “adamantly [expressed to her] that

he did not necessarily wish to be [Respondent’s general] guardian, just that [he

wanted] one [] appointed so that there was some accountability.”

 When the petition was filed, attorney Lynn Andrews (“Appellant”), was

appointed to serve as Respondent’s GAL. She immediately withdrew from the case

as GAL and stated she had a conflict of interest because she is a friend of Hopkins’

and discussed the case with her. Thereafter, Ms. Black-Oliver was appointed as GAL.

 8 There is no record evidence that Hopkins represented Respondent as a client beyond this
durable power of attorney document. There is also no evidence that Hopkins self-gifted any of
Respondent’s property.
 9 Petitioner filed a Standard Form AOC-SP-200. It states, inter alia, “Respondent has suffered

significant cognitive decline and memory loss, apparently due to dementia, as well as physical
problems such as dehydration, extreme fatigue, and bad falls.”

 3
 IN RE CRANOR

 HUNTER, JR., Robert N., J., concurring in part and dissenting in part

 Several days later, Petitioner’s counsel asked Ms. Black-Oliver if she would

agree to have a forensic psychiatrist from Duke University examine Respondent. Ms.

Black-Oliver agreed “that was a prudent thing to do,” and the parties scheduled the

examination on a Saturday. Appellant sent an email to Petitioner’s counsel Saturday

morning and stated, “I’m representing [Respondent], and I’m not going to allow this

evaluation.” The parties went to Respondent’s assisted living facility so Ms. Black-

Oliver could interview Respondent and the forensic psychiatrist could examine

Respondent, but Appellant intervened “to try to delay or prevent Ms. Black-Oliver

from speaking to [Respondent].”

 On 13 June 2013, Appellant stated in a written motion that Respondent

retained her as counsel. Appellant moved to stay the multidisciplinary evaluation

(“MDE”). She obtained an ex parte order staying the MDE. The parties were heard

on the matter on 14 June 2013. At the hearing, Appellant debated the proper

procedure to schedule a MDE and stated the following:

 And we’ve already said that we will admit that
 [Respondent] has limited capacity. We’re not alleging she’s
 incompetent. If [Petitioner’s counsel] says this is a
 contested case on incompetency, he’s wrong. We will
 concede that the Respondent has early stage dementia or
 Alzheimer’s. That’s the reason she’s in an assisted living
 facility. . . .

 And, again, I don’t blame Ms. Black-Oliver. I think
 [Petitioner’s counsel] has been pushing and bullying and
 trying to do everything as fast as he can in this case, but
 there’s just nothing there. A [MDE] is appropriate in a case

 4
 IN RE CRANOR

 HUNTER, JR., Robert N., J., concurring in part and dissenting in part

 where incompetency is at question or contested. We’d
 advised him we’re not contesting that [Respondent] has
 limited capacity. . . . And we will admit that [Respondent]
 has a diagnosis of early onset, early stage dementia. She’s
 very forgetful. . . . Apparently [Petitioner’s counsel] is
 trying to have [Respondent] declared completely
 incompetent with a full guardianship stripping her of every
 right she can possibly have.

 Thereafter, the parties questioned Ms. Black-Oliver. Petitioner’s counsel

questioned Ms. Black-Oliver as follows:

 [PETITIONER’S COUNSEL]: Did [Appellant] threaten to
 have you disqualified [as guardian ad litem]?

 [MS. BLACK-OLIVER]: I believe she stated that it was her
 intention to do so yesterday, but she has not done so yes—
 yet.

 [PETITIONER’S COUNSEL]: And did she go to the Public
 Defender who is the person that appoints the guardian ad
 litems to complain that you had acted inappropriately
 and/or colluded and/or threatened to kidnap [Respondent]
 to your knowledge?

 [MS. BLACK-OLIVER]: That is summarily my
 understanding.

Ms. Black-Oliver also testified that Petitioner is “independently wealthy himself” and

“[r]eceived the same split of inheritance that [Respondent] received.” She stated,

“[A]ny potential concerns I would have of [Petitioner’s] interest in the proceedings

being financial and having control of [Respondent’s] assets was [sic] quelled . . . .”

 5
 IN RE CRANOR

 HUNTER, JR., Robert N., J., concurring in part and dissenting in part

 At the conclusion of the hearing Petitioner’s counsel asked the trial court to

dissolve the MDE stay, and to disqualify Appellant as Respondent’s counsel. The

trial court stayed the MDE and denied Petitioner’s motion to disqualify.

 One week later, on 21 June 2013, Appellant filed a Rule 12(b)(6) motion to

dismiss the petition. She alleged, “The Petition fails to state any facts tending to

support a finding that the Respondent is an ‘Incompetent Adult’ as defined by NCGS

35A-1101(7). The Petition contains no factual allegations tending to show that the

Respondent lacks sufficient capacity to manage her own affairs . . . .”

 Petitioner filed a verified amended petition on 10 July 2013 and Appellant filed

a response in which she admitted the following:

 The Respondent admits that when she was living alone,
 her memory problems and inability to drive adversely
 impacted her ability to prepare adequate meals for herself,
 which led to her being hospitalized after a fall due to
 dehydration. . . . Respondent admits that during the time
 when she was living alone, she might have been vulnerable
 to being taken advantage of by unscrupulous persons
 offering to perform services on her home. Since the
 Respondent wisely decided to move into a facility where
 she no longer has the responsibility of keeping up a house
 and where there are other people around to look after her,
 this is no longer an issue.

 The parties were heard on the motion to dismiss on 3 July 2013, and the Clerk

of Durham County Superior Court concluded the Standard Form AOC-SP-200

petition was not specific enough. The Clerk dismissed the case without prejudice,

 6
 IN RE CRANOR

 HUNTER, JR., Robert N., J., concurring in part and dissenting in part

allowing Petitioner to re-file or appeal to Superior Court “for trial de novo” and told

Petitioner’s counsel to “keep intact all the work you’ve done . . . .”

 Afterwards, Appellant prepared a draft order for dismissal with prejudice and

emailed it to the Clerk without first allowing Petitioner’s counsel to review it. The

Clerk signed the order and backdated it six days without consent of the parties.

Petitioner’s counsel emailed the Clerk and told him the order should be without

prejudice and asked him to correct it. The Clerk declined to do so and told Petitioner’s

counsel that changes would only be made if Appellant consented to them.

Consequently, Petitioner appealed to Superior Court.

 In Superior Court, Appellant sought to limit the scope of the appeal to only the

issue of dismissal. The Superior Court issued an order stating, “[Petitioner] is

entitled to a de novo hearing . . . in accordance with G.S. 35A-1115 . . . [and the appeal

is not] limited to the record before the Clerk of Court.” The Superior Court signed a

MDE order to have Respondent evaluated and allowed Petitioner to amend his

petition. The Superior Court scheduled the case for an evidentiary hearing.

 Appellant appealed the Superior Court’s order and argued Petitioner had no

right to appeal from a Clerk of Court’s dismissal. She argued the Clerk’s dismissal

should have been without prejudice, and the trial court remanded the case to the

Clerk to allow him to amend the order, which the Clerk did on 2 October 2013. Once

 7
 IN RE CRANOR

 HUNTER, JR., Robert N., J., concurring in part and dissenting in part

the Clerk amended the order to reflect the dismissal was without prejudice, the

Superior Court entered an order dismissing Petitioner’s appeal for lack of standing.

 On 28 October 2013, Appellant filed a motion for attorneys fees pursuant to

N.C. Gen. Stat. § 6-21.5, and alleged Petitioner and his counsel filed a nonjusticiable

case when they petitioned to have Respondent declared incompetent. Appellant

alleged the following, inter alia:

 6. After the dismissal of [the original] Petition and
 Amended Petition and [the] appeal to Superior Court,
 Petitioner continued to file numerous pleadings that had
 no relevance to the issues pertinent to his pending appeal
 in a last-ditch effort to unearth some evidentiary support
 for his unsubstantiated claim that the Respondent is
 incompetent. . . .

 9. [After a MDE stating Respondent has the capacity to
 manager her affairs] Petitioner continued to pursue this
 litigation, seeking additional discovery and further
 continuances, long after the time limit for a hearing
 prescribed by G.S. 35A-1108 had passed, and in the face of
 overwhelming evidence that Respondent is not
 incompetent and does not need a guardian. . . .

 14. Petitioner did not have reasonable grounds to bring this
 proceeding, as shown by: the complete lack of any
 allegation or evidence tending to show that Respondent is
 incompetent; the complete lack of any medical evidence for
 such alleged incompetence; and the complete lack of any
 valid reason why an adjudication of incompetence was
 sought . . . .

 16. The pleadings filed in this special proceeding reveal a
 complete absence of any justiciable issue of either law or
 fact . . . .

 8
 IN RE CRANOR

 HUNTER, JR., Robert N., J., concurring in part and dissenting in part

 17. Petitioner did not advance any claim supported by a
 good faith argument for an extension, modification, or
 reversal of law in this proceeding.

 Appellant filed a second motion on 28 October 2013 against Petitioner and

Petitioner’s counsel for Rule 11 sanctions. Appellant alleged the following, inter alia:

 1. . . . [The 22 May 2013] Petition did not contain any
 statements or allegations made upon information and
 belief. . . .

 3. The Petition and other pleadings filed for Petitioner by
 his Attorney were presented for an improper purpose, such
 as intimidation or harassment of Respondent, [Appellant],
 [Hopkins], and other witnesses, and to cause unnecessary
 delay or needlessly increase the cost of litigation, in that:

 a. The affidavit and other pleadings . . . strongly
 suggest that the reason Petitioner initiated this proceeding
 is because Petitioner does not like [Hopkins], rather out of
 than [sic] any genuine concern for Respondent’s welfare . .
 ..

 i. After the Clerk dismissed his Petition and
 Amended Petition and Petitioner elected to appeal said
 dismissal rather than initiate a new proceeding, Petitioner
 filed a barrage of voluminous and frivolous motions,
 requests, notices, and memoranda that had no relevance to
 the issues pertaining to Petitioner’s appeal and said appeal
 was ultimately dismissed by the Superior Court for lack of
 standing . . .

 [5.] e. Attorney for the Petitioner had ample time to
 investigate this matter, both before and after the filing of
 his Petition and, long past the timeframe prescribed by
 G.S. 35A-1108 for holding a hearing on his Petition for
 Adjudication of Incompetency, still had no evidentiary
 support for Petitioner’s claim that Respondent is
 incompetent and would be unlikely to find any evidentiary
 support for such a claim.

 9
 IN RE CRANOR

 HUNTER, JR., Robert N., J., concurring in part and dissenting in part

 On 21 December 2013, Petitioner and Petitioner’s counsel moved for Rule 11

sanctions against Appellant. They alleged Appellant’s motions for sanctions,

attorneys fees, and costs violated Rule 11. On 17 December 2013, they filed a thirty-

four page brief in response to Appellant’s motions and included seventeen exhibits

that included deposition and hearing transcripts, affidavits, email messages, and

other pertinent information.

 The parties were heard on the Rule 11 motions in Superior Court on 8

September 2014 through 10 September 2014. The trial court reviewed the entire

record, heard arguments of counsel, and read counsel’s briefs. In a 12 September

2014 order, the trial court made the following findings of fact and conclusions of law:

 Findings of Fact
 1. Petitioner in this case, Respondent's brother, had been
 concerned about Respondent's health and well-being for
 several years preceding the filing of the petition in this
 case. These concerns were vastly increased when he
 received an email from Harriet Hopkins dated May 2, 2013
 in which she informed him that his sister had really
 declined over the last month and expressed concerns about
 her worsening memory and physical issues, including bad
 falls and dehydration which she described as symptoms of
 dementia. She told him it was pretty clear that it was a
 safety risk for her to live alone.

 2. The original petition was filed in this case on June 3,
 2013, with the Durham County Clerk of Court, using Form
 AOC-SP-200. It alleged that Respondent lacked sufficient
 capacity to manage her own affairs, etc., and supported
 those allegations with facts that basically repeated what
 Hopkins told him in the email. It was signed and verified
 by Petitioner. There is not a place on Form AOC-SP-200

 10
 IN RE CRANOR

HUNTER, JR., Robert N., J., concurring in part and dissenting in part

for Petitioner’s attorney to sign. . . .

11. [Appellant] has repeatedly argued to this Court and to
others in this case that because Petitioner refused to
consent to a limited guardianship with Harriet Hopkins as
the guardian, that he was seeking to take away all of
Respondent's rights. That argument is a
misrepresentation of the facts and the law.

11. [sic] The Clerk of Court, after he dismissed the petition
is this case on Rule 12 (b) (8) grounds, advised [Petitioner’s
counsel] that he could appeal for a trial de novo before a
Superior Court judge and that he could have a jury trial.
(Emphasis added).

12. Superior Court Judge Paul Ridgeway also ordered the
case set for a hearing on the merits in Superior Court in
his August 8, 2013 Order, based on his understanding at
that time that the Clerk's dismissal was with prejudice.

13. Based on the advice of the Clerk, Judge Ridgeway's
Order and [Petitioner’s Counsel’s] interpretation of the
law, [Petitioner’s Counsel] began to prepare for trial in
Superior Court. That preparation included signing and
filing the pleadings complained of by Respondent in her
Rule 11 motions. . . .

15. The record in this proceeding, including but not limited
to the May 2, 2013, email of Harriet Hopkins, the durable
power of attorney of Respondent that was drafted by Ms.
Hopkins, and the admissions of [Appellant] and [Ms.
Black-Oliver] as to the incompetence of the Respondent,
clearly establishes the justiciability of the issues presented
by the petition in this proceeding. . . .

17. [Appellant], who has the burden of proof to support her
motions for sanctions, fails to identify any legal authority
or provide any basis for a good faith argument for the
extension, modification, or reversal of existing law as a
basis to impose sanctions on the Petitioner and [his

 11
 IN RE CRANOR

HUNTER, JR., Robert N., J., concurring in part and dissenting in part

counsel] under Rule 11 of the North Carolina Rules of Civil
Procedure and instead appears to rely solely on her
personal opinion of what she believes the law in North
Carolina should be.

18. [Appellant’s] conduct in this proceeding, which includes
numerous and repeated misrepresentations of fact and law
that are clearly intentional, is egregious, and such conduct
alone provides a sufficient basis for sanctioning [Appellant]
under the inherent authority of the Court.

 Conclusions of Law
1. No reasonably competent attorney could conclude that
the issues brought by Petitioner are non-justiciable in this
proceeding. [Appellant’s] amended motion for attorney's
fees pursuant to G.S. 6-21.5 is thus neither well-grounded
in fact after reasonable inquiry nor warranted by existing
law or a good faith argument for the extension,
modification, or reversal of existing law. It was also
interposed to harass, delay and drive up the costs of
litigation, all of which are improper purposes. This motion
is frivolous as a matter of law and should be denied. Filing
this frivolous motion is in violation of Rule 11 and requires
the imposition of sanctions against [Appellant].

2. In contrast, the Petitioner's initial Petition, Amendment
to the Petition, and Second Amended Petition were clearly
well-grounded in fact based upon reasonable inquiry and
were warranted by Chapter 35A of the North Carolina
General Statutes. None of them violate Rule 11.

3. As to Respondent's Amended Motion for Sanctions
Against Petitioner, the Court finds that it is unwarranted
by law and was interposed for an improper purpose, to wit:
harassing Petitioner and causing needless increase in the
cost of litigation. Therefore, it violates Rule 11 and
requires that [Appellant] be sanctioned.

4. As to Respondent's Amended Motion for Sanctions
Against Petitioner's Attorney, Respondent has failed to

 12
 IN RE CRANOR

 HUNTER, JR., Robert N., J., concurring in part and dissenting in part

 meet her burden of proving by the greater weight of the
 evidence that Petitioner's attorney signed any pleading
 that was not well grounded in fact, not warranted by
 existing law or was interposed for any improper purpose. .
 ..

 8. The evident purpose of the totality of [Appellant’s]
 actions in the case was to protect the interests of Harriet
 Hopkins to the detriment of Respondent. This purpose
 may be inferred from the objective behavior of [Appellant],
 including but not limited to: alleging that this case is non-
 justicable, filing Rule 11 motions against Petitioner,
 accepting employment in this case after having been
 appointed GAL and then withdrawing as GAL because of a
 conflict arising out of her friendship with Harriet Hopkins,
 objecting to a multidisciplinary evaluation of Respondent
 and then acting to have it stayed after the Clerk ordered it,
 accusing [Ms. Black-Oliver] of threatening to kidnap
 Respondent, and making repeated claims that Harriet
 Hopkins had done nothing wrong. This evident purpose
 goes beyond the scope of Rule 11 in its severity and its
 potential adverse effect on the administration of justice.
 The Court is justified in such situations to look beyond the
 sanctions of Rule 11 and invoke its inherent authority.

 The trial court allowed Petitioner’s Rule 11 motion, prohibited Appellant from

accepting any fees from her representation of Respondent, ordered Appellant to pay

Petitioner’s attorneys fees, removed Appellant as Respondent’s attorney, ordered the

Clerk to deliver a copy of the order to the Executive Director of the North Carolina

State Bar, and requested the State Bar open an investigation into Appellant’s

behavior.

 The trial court set a second hearing date to determine the amount of attorneys

fees and costs. On 2 October 2014, Petitioner’s counsel filed a petition for attorneys

 13
 IN RE CRANOR

 HUNTER, JR., Robert N., J., concurring in part and dissenting in part

fees and costs and included a log of the billable time they spent defending Petitioner

and themselves against Appellant’s Rule 11 motion. Appellant filed a response on 13

October 2014, and objected to the attorneys fees and costs. She also filed a Rule 60(b)

motion seeking relief from the 12 September 2014 order awarding Rule 11 sanctions

against her. The parties were heard on their motions on 12 December 2014.

 At the hearing, the trial court stated the following:

 I’ve read [Appellant’s] Rule 60 motion, and even though it[]
 cites provisions of law that weren’t necessarily brought up
 in the hearing back in September, I don’t’ see anything in
 here that I didn’t’ take into consideration in entering my
 order. I mean, for instance, I specifically read everything
 in Michael Crowell’s materials concerning judicial
 discipline. I don’t consider what I did in that September
 12th order to be discipline. . . . I specifically wasn’t
 disciplining [Appellant] in my mind, and that’s why I
 referred it to the State Bar. . . . All right. Well, just [] for
 the record and so everybody understands, I took this case
 as seriously as any case I have ever heard. I did
 independent research. I didn’t rely on the filings done by
 either side because, frankly, I wanted to go outside those.
 I labored over what the right thing to do in this case was
 and what the right procedure was. I thought about it a lot.

The trial court denied Appellant’s Rule 60 motion. Additionally, the trial court

scrutinized the affidavits of billable hours submitted by Petitioner’s counsel and

found that their hourly rates of $250.00 and $285.00 per hour were “more than

reasonable.”

 14
 IN RE CRANOR

 HUNTER, JR., Robert N., J., concurring in part and dissenting in part

 Thereafter, the trial court issued an order on 17 December 2014. In the order,

the trial court ordered Appellant to pay Petitioner $122,987.72 in attorneys fees and

costs. Appellant filed her notice of appeal on 13 January 2015.

 Analysis

 Rule 11 of the North Carolina Rules of Civil Procedure sets out the following:

 Every pleading, motion, and other paper of a party
 represented by an attorney shall be signed by at least one
 attorney of record . . . . The signature of an attorney or
 party constitutes a certificate by him that he has read the
 pleading, motion, or other paper; that to the best of his
 knowledge, information, and belief formed after reasonable
 inquiry it is well grounded in fact and is warranted by
 existing law or a good faith argument for the extension,
 modification, or reversal of existing law, and that it is not
 interposed for any improper purpose, such as to harass or
 to cause unnecessary delay or needless increase in the cost
 of litigation. . . . If a pleading, motion, or other paper is
 signed in violation of this rule, the court, upon motion or
 upon its own initiative, shall impose upon the person who
 signed it, a represented party, or both, an appropriate
 sanction, which may include an order to pay to the other
 party or parties the amount of the reasonable expenses
 incurred because of the filing of the pleading, motion, or
 other paper, including a reasonable attorney's fee.

N.C. Gen. Stat. § 1A-1, Rule 11(a) (2015). A Rule 11 motion signed in violation of this

rule subjects an attorney to sanctions.

 Further, “the central purpose of Rule 11 is to deter baseless filings and to

streamline the administration and procedure of our courts.” Adams v. Bank United

of Texas FSB, 167 N.C. App. 395, 399, 606 S.E.2d 149, 153 (2004) (citation omitted).

Rule 11 was enumerated to “prevent abuse of the legal system, [and] our General

 15
 IN RE CRANOR

 HUNTER, JR., Robert N., J., concurring in part and dissenting in part

Assembly never intend[ed] to constrain or discourage counsel from the appropriate,

well-reasoned pursuit of a just result for their client.” Grover v. Norris, 137 N.C. App.

487, 495, 529 S.E.2d 231, 235 (2000).

 “Under Rule 11, an objective standard is used to determine whether a paper

has been interposed for an improper purpose, with the burden on the movant to prove

such improper purpose.” Johns v. Johns, 195 N.C. App. 201, 212, 672 S.E.2d 34, 42

(2009) (citation omitted). An “improper purpose” is “any purpose other than one to

vindicate rights . . . or to put claims of right to a proper test.” Persis Nova Const. Inc.

v. Edwards, 195 N.C. App. 55, 63, 671 S.E.2d 23, 28 (2009) (citation omitted). For

example, an improper purpose may be inferred from the following:

 [F]rom “the service or filing of excessive, successive, or
 repetitive [papers] ...,” from “filing successive lawsuits
 despite the res judicata bar of earlier judgments,” from
 “failing to serve the adversary with contested motions,”
 from filing numerous dispositive motions when trial is
 imminent, from “the filing of meritless papers by counsel
 who have extensive experience in the pertinent area of
 law,” from “filing suit with no factual basis for the purpose
 of ‘fishing’ for some evidence of liability,” from “continuing
 to press an obviously meritless claim after being
 specifically advised of its meritlessness by a judge or
 magistrate,” or from “filing papers containing ‘scandalous,
 libellous, and impertinent matters' for the purpose of
 harassing a party or counsel.”

Id. (quoting Mack v. Moore, 107 N.C. App. 87, 93, 418 S.E.2d 685, 689 (1992) (quoting

Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse § 13(C) (Supp.

1992))).

 16
 IN RE CRANOR

 HUNTER, JR., Robert N., J., concurring in part and dissenting in part

 After considering the context of Appellant’s Rule 11 motion, and carefully

reviewing the record de novo, it is clear Appellant violated Rule 11 when she signed

and filed her Rule 11 motion against Petitioner and Petitioner’s counsel. At the outset

of litigation, Appellant conceded this is “[not a] contested case” of incompetency. She

admitted Respondent has dementia and/or Alzheimer’s. The other GAL, Ms. Black-

Oliver, conceded Respondent is incompetent and worked to have Respondent

evaluated by a forensic psychiatrist. The record clearly shows Respondent has

endured a downward trajectory of mental competency for many years. The evidence

to support that contention comes from nurses, caregivers, Respondent’s ex-husband,

Hopkins, and others, not just Petitioner. Appellant alleges there is “a complete lack

of [] evidence,” and no “good faith” reason for Petitioner to bring this action. Her

allegations are not supported by the record. The record shows Respondent failed to

feed herself, suffered dehydrated, and sustained a serious fall, all due to her lack of

mental capacity. Moreover, there is no substantive evidence to suggest Petitioner is

trying to completely control Respondent, for financial incentive or otherwise, as

Appellant alleges. Rather, the record shows Petitioner is financially well-off and has

concern for his sister, due to his conversations with her ex-husband, friends, and

caregivers, and after reviewing the durable power of attorney she executed that

exposed her assets to Hopkins’ potential self-gifting. Therefore, Petitioner and

 17
 IN RE CRANOR

 HUNTER, JR., Robert N., J., concurring in part and dissenting in part

Petitioner’s counsel carried their burden in proving Appellant’s Rule 11 motion was

filed for an objectively improper purpose.

 First, I would hold the trial court’s conclusions of law support its imposition of

sanctions; the trial court’s conclusions of law are supported by its findings of fact; and

the findings of fact are supported by a sufficiency of the evidence. Therefore, the trial

court’s “decision to impose” Rule 11 sanctions is binding on this court. Turner, 352

N.C. at 165, 381 S.E.2d at 714.

 Second, I would hold the trial court did not abuse its discretion in selecting the

specific sanctions at issue. The trial court assigned the excess cost of litigation to

Appellant, and prevented her from further representation in a case that she originally

claimed presented a conflict of interest. Further, the trial court referred the matter

to the State Bar, and in doing so, it did not abuse its discretion.

 For the foregoing reasons, I respectfully dissent in favor of affirming the trial

court.

 18